## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **MADISON ELLIS, KENNEDY ELLIS, and CARTER ELLIS,** | ) | CASE NO. |
| | ) | |
| | ) | JUDGE |
| *Individually and on behalf of all others similarly situated,* | ) | |
| | ) | **PLAINTIFFS' CLASS ACTION AND** |
| | ) | **COLLECTIVE ACTION** |
| Plaintiffs, | ) | **COMPLAINT** |
| | ) | |
| *v.* | ) | ***(Jury Demand Endorse Hereon)*** |
| | ) | |
| **DANTE DINING GROUP, LLC** | ) | |
| c/o Statutory Agent | ) | |
| ACFB Incorporated | ) | |
| 200 Public Square, Suite 2300 | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| **GIAPPONE, LLC** | ) | |
| c/o Statutory Agent | ) | |
| Alex J. Ragon | ) | |
| 6850 Miller Road | ) | |
| Brecksville, Ohio 44141 | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| **GOMA BY DANTE, LLC** | ) | |
| c/o Statutory Agent | ) | |
| Robert P. McManus | ) | |
| PO BOX 926 | ) | |
| Hudson, Ohio 44236 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JOHN DOE COMPANIES I-XX** | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs Madison Ellis, Kennedy Ellis, and Carter Ellis, on behalf of themselves and all

others similarly situated, for their Class and Collective Action Complaint against Defendants

Dante Dining Group, LLC, Giappone, LLC, GOMA By Dante, LLC, and John Doe Companies I-XX (hereinafter also referred to as "Defendants"), state and allege the following:

## INTRODUCTION

1.      The Fair Labor Standards Act of 1938, as amended (the "FLSA"), 29 U.S.C. § 201, *et seq.*, is a broadly remedial and humanitarian statute designed to correct "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers[,]" 29 U.S.C. § 202(a), as well as "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best Freight Sys. Inc*., 450 U.S. 728, 739 (1981). The FLSA required Defendants to pay all non-exempt employees at least the applicable minimum wage for all hours worked. 29 U.S.C. § 206. Ohio constitutional law further required the payment of minimum wage and contained other compensation requirements and/or penalties. *See* Ohio Const. Article II, Section 34a.

2.      Plaintiffs bring this case to challenge the practices and policies of Defendants that willfully violate the FLSA, 29 U.S.C. §§ 201-219, as well as the Constitution of the State of Ohio, Article II, Section 34a.

3.      Plaintiffs bring this case as an FLSA collective action pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability… may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated… [who] gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought" – on behalf of themselves and other employees who opt-into this action under the FLSA ("Opt-In Plaintiffs"), **COUNT ONE** of this Complaint.

4.      Plaintiffs also bring this case as a class action under Fed. R. Civ. P. 23 on behalf of themselves and other members of a class of persons who assert claims under Article II, Section 34a of the Ohio Constitution (the "State Law Class"), **COUNT TWO** of this Complaint.

5.      Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class now seek to exercise their rights to unlawfully unpaid minimum wages, unlawfully withheld tips, and additional statutory liquidated damages in this matter, other penalties and compensation available under federal and Ohio law, in addition to prejudgment and post-judgment interest, costs and attorneys' fees incurred in prosecuting this action, the employer's share of relevant taxes, and such further relief as the Court deems equitable and just.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7.      This Court has supplemental jurisdiction over Plaintiffs' claims under Ohio law because those claims are so related to the FLSA claims as to form part of the same case or controversy. 28 U.S.C. § 1367.

8.      Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because one or more Defendant resides in this district and division and/or because all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here.

## PARTIES

9.      Plaintiff Madison Ellis is an individual, a citizen of the United States, and a resident of the State of Ohio. Plaintiff Madison Ellis has completed an "Opt-In Consent Form" which is filed as Exhibit A to this Complaint and is incorporated by reference herein.

10.    Plaintiff Kennedy Ellis is an individual, a citizen of the United States, and a resident of the State of Ohio. Plaintiff Kennedy Ellis has completed an "Opt-In Consent Form" which is filed as Exhibit B to this Complaint and is incorporated by reference herein.

11.    Plaintiff Carter Ellis is an individual, a citizen of the United States, and a resident of the State of Ohio. Plaintiff Carter Ellis has completed an "Opt-In Consent Form" which is filed as Exhibit C to this Complaint and is incorporated by reference herein.

12.    Defendant Dante Dining Group, LLC is an Ohio for-profit limited liability company with its principal place of business at 2247 Professor Avenue, Cleveland, Ohio 44113.[1] According to records maintained by the Ohio Secretary of State, Defendant Dante Dining Group, LLC's Statutory Agent for service of process is ACFB Incorporated, 200 Public Square, Suite 2300, Cleveland, Ohio 44114.[2]

13.    Defendant Giappone, LLC is an Ohio for-profit limited liability company with its principal place of business in Cleveland, Ohio. According to records maintained by the Ohio Secretary of State, Defendant Giappone, LLC's Statutory Agent for service of process is Alex J. Ragon, 6850 Miller Road, Brecksville, Ohio 44141.[3]

14.    Defendant GOMA By Dante, LLC is an Ohio for-profit limited liability company with its principal place of business at 2079 East Fourth Street, Cleveland, Ohio 44115.[4] According to records maintained by the Ohio Secretary of State, Defendant GOMA By Dante, LLC's Statutory Agent for service of process is Robert P. McManus, PO BOX 926, Hudson, Ohio 44236.[5]

---

[1] *See* https://danteboccuzzi.com/ (last accessed August 4, 2023).
[2] https://businesssearch.ohiosos.gov?=businessDetails/2073530 (last accessed August 4, 2023).
[3] https://businesssearch.ohiosos.gov?=businessDetails/4415622 (last accessed August 4, 2023).
[4] *See* https://gomarestaurant.com/ (last accessed August 4, 2023).
[5] https://businesssearch.ohiosos.gov?=businessDetails/4274712 (last accessed August 4, 2023).

15.     Upon information and belief, Defendant(s) John Doe Companies I-XX are and/or were, at all times relevant, individuals, groups, companies, partnerships, and/or other entities who are an "employer" under the FLSA and Ohio law as person(s) who acted directly or indirectly in the interest of an employer in relation to employees – including Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class – and who may have (1) been owned or operated by or in conjunction with any of the Defendants as a "Dante Dining Group" restaurant location in Ohio; (2) hired individuals, including Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class as employees of any of the named Defendants; (3) been involved in Plaintiffs,' other Opt-In Plaintiffs,' and State Law Class members' damages; (4) had the authority to hire and fire Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class; (5) supervised and controlled work schedules or the conditions of employment as to Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class; (6) determined the rate and method of payment as to Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class; (7) maintained employment records in connection with Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class; and/or (8) are otherwise proper parties to this lawsuit as employers of Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class. The identities of Defendant(s) John Doe Corporations I-XX remain unknown despite Plaintiffs' due diligence.

## **FACTUAL ALLEGATIONS**

### **Defendants' Business and Defendants' Statuses as Employers**

16.     Defendants own and operate various restaurants in Northeastern Ohio.

17.    Defendants are each "employers" of Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class within the meaning of the FLSA, 29 U.S.C. § 203(d) and Ohio Const. Article II, Section 34a.

18.    Defendants utilize non-exempt employees, including Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class, in furtherance of their business purposes.

19.    At all times relevant, Defendants were an enterprise within the meaning of 29 U.S.C. § 203(r).

20.    At all times relevant, Defendants were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

21.    Defendants operate and control an enterprise engaged in commerce, with annual gross volume of business exceeding $500,000.00.

### Defendants' Statuses as a "Joint Employer," "Single Employer," and "Single Enterprise" as to each Northeast Ohio Restaurant Location

22.    The FLSA and Ohio law "contemplate[] there being several simultaneous employers who may be responsible for compliance with the FLSA."[6] "The remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications."[7]

23.    Defendants own and/or operate several "Dante Dining Group" restaurants in Northeastern Ohio.[8]

24.    Defendants are each an employer of Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class pursuant to the FLSA and Ohio law.

---

[6] *Dole v. Elliott Travel & Tours, Inc.*, 942 F2d 962, 965 (6th Cir. 1991) (citing *Falk v. Brennan*, 414 U.S. 190, 195, 94 S. Ct. 427, 38 L. Ed. 2d 406 (1973)).
[7] *Id.* (citing *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam)).
[8] *See, e.g.,* https://danteboccuzzi.com/ (last accessed August 4, 2023).

25.     As noted above, and at all times relevant, Defendants were an enterprise within the meaning of 29 U.S.C. § 203(r). At all times relevant, Defendants have operated as a single enterprise within the meaning of Section 203(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose; namely, the operation of Defendants' restaurant locations – under Defendants' "Dante Dining Group" brand. Defendants were individually and jointly "employers" within the meaning of the FLSA and Ohio law as to each Northeast Ohio restaurant location.

26.     Defendants are engaged in related activities, *i.e.* all activities which are necessary for the operation and maintenance of Defendants' "Dante Dining Group" restaurants.

27.     Defendants share employees between restaurant locations.

28.     Defendants share common management and/or management structure between Dante Dining Group restaurant locations.

29.     Defendants provide the same array of products and services to customers at the Dante Dining Group restaurant locations.

30.     Defendants are an integrated company that share customers, equipment, systems, processes, and other assets.

31.     Defendants acted directly or indirectly in the interest of each other in relation to Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class between restaurant locations.

32.     Defendants share ownership, common management, common directors and/or boards.[9]

---

[9] *See, e.g.,* https://www.linkedin.com/in/dante-boccuzzi-6169065a (noting that Dante Boccuzzi is the Chef Owner of "The Dante Dining Group") (last accessed August 4, 2023).

33.     Defendants represent themselves to the general public as a single restaurant/entertainment entity – "Dante Dining Group." *See* www.danteboccuzzi.com.

34.     Defendants use the name "Dante Dining Group" in reference to all of their restaurant locations.

35.     Defendants' restaurants are advertised on the same website www.danteboccuzzi.com, as provided in the screenshot below:



36.     Defendants represent themselves to the general public as a single restaurant/entertainment entity - "Dante Dining Group" – which "[c]onsists of Dante Restaurant, Dante Next Door, Ginko, D.B.A., The D.C. Pasta Company, Dante's Inferno, Northside Speakeasy, Goma, Coda, Giappone."[10]

37.     Defendants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system which is an economic unit directed to the accomplishment of a common business purpose.

---

[10] https://www.linkedin.com/in/dante-boccuzzi-6169065a (last accessed August 4, 2023).

38.     Defendants have mutually benefitted from the work and services performed by Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class.

39.     Defendants apply or cause to be applied substantially the same employment policies, practices, and procedures to all restaurant locations.

40.     Defendants' Dante Dining Group restaurants provide the same service product to customers by using a set formula when conducting business.

41.     Part of that set formula is the deprivation of minimum wages and tips to their tipped employees as outlined in this Complaint.

42.     As a result, each Defendant is responsible, both individually, *jointly and severally*, for compliance with all of the applicable provisions of the FLSA and Ohio law, and Defendants are a "single enterprise" or "single employer" for the purposes of the FLSA and Ohio law.

### Plaintiffs,' other Opt-In Plaintiffs,' and State Law Class Members' Non-Exempt Employment Statuses with Defendants

43.     Plaintiff Madison Ellis has been employed by Defendants since approximately August 2021 as a non-exempt server.

44.     Plaintiff Kennedy Ellis was employed by Defendants from approximately June 2021 until August 2022 as a non-exempt server.

45.     Plaintiff Carter Ellis has been employed by Defendants since approximately July 2021 to the present as a non-exempt server.

46.     Throughout their employments, Defendants classified and paid Plaintiffs, as well as other Opt-In Plaintiffs, and members of the State Law Class, as non-exempt employees.

47.     At all times relevant, Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class were employees within the meaning of 29 U.S.C. § 203(e) and Ohio Const. Article II, Section 34a.

48.     At all times relevant, Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 206.

**The FLSA and Ohio Law's Minimum Wage
and Tip/Tip Credit Requirements**

49.     The FLSA incorporates state minimum wage laws when they include a higher minimum wage than the FLSA. 29 U.S.C. § 206. The Ohio Constitution, for example, provides the following requirements for Ohio's minimum wage tip credit: "[a]n employer may pay an employee less than, but not less than half, the minimum wage rate required by this section if the employer is able to demonstrate that the employee receives tips that combined with the wages paid by the employer are equal to or greater than the minimum wage rate for all hours worked." Ohio Const. Article II, Section 34a.

50.     Ohio's minimum wage, and therefore the FLSA minimum wage applicable to Ohio workers, is adjusted annually as specified by Ohio Const. Article II, Section 34a, and for tipped employees was $4.35 per hour plus tips totaling at least $8.70 per hour in 2020,[11] $4.40 per hour plus tips totaling at least $8.80 per hour in 2021,[12] $4.65 per hour plus tips totaling at

---

[11] https://com.ohio.gov/documents/dico_2020MinimumWageposter.pdf (last accessed August 3, 2023).
[12] https://com.ohio.gov/documents/dico_2021MinimumWageposter.pdf (last accessed August 3, 2023).

least $9.30 per hour in 2022,[13] and is $5.05 per hour plus tips totaling at least $10.10 per hour in 2023.[14]

51.     The tip-credit provisions of the FLSA allow employers to pay less than the statutory minimum wage provided that the employer complies with strict requirements.

52.     29 C.F.R. § 531.56(e), the "dual jobs" regulation, explains how workers who engage in both tipped and non-tipped work are to be compensated as required by Sections 3(m) and 3(t) of the FLSA. The "dual jobs" regulation states:

> In some situations an employee is employed in dual jobs, as, for example, where a maintenance person in a hotel also works as a server. In such a situation if the employee customarily and regularly receives at least $30 a month in tips for the employee's work as a server, the employee is engaged in a tipped occupation only when employed as a server. The employee is employed in two occupations, and no tip credit can be taken for the employee's hours of employment in the occupation of maintenance person.

53.     29 C.F.R. § 531.56(f) applies to employees "[e]ngaged in a tipped occupation." § 531.56(f) was intended to address situations, as described in the Federal Register,[15] where workers were "required to perform non-tipped work for substantial amounts of time, such as filling condiments and sweeping an assigned section of the restaurant for 30-45 minutes before and after the restaurant is open, rolling silverware for an hour after a long shift, or moving chairs to and from an outdoor patio for an hour before and an hour after service." The DOL provided a striking example where a server was required to spend "2-3 hours of my shift setting up the dining room and bar, stocking the kitchen, sweeping, washing bar dishes, doing my own prep

---

[13] https://com.ohio.gov/about-us/media-center/news/minimum-wage-increase-announced (last accessed August 3, 2023).

[14] https://com.ohio.gov/static/documents/2023MWPoster.pdf (last accessed August 3, 2023).

[15] https://www.federalregister.gov/documents/2021/10/29/2021-23446/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal (last accessed August 3, 2023).

work, and then doing it all again at the end of the night," with the server noting that "I was not

making . . . additional tips during this time."[16]

54.     29 C.F.R. § 531.56(f)(5), addressing situations where an employer is not

permitted to take a tip credit as a result of a tipped employee performing work that is not part of

the tipped occupation, provides:

> (i) Work that is not part of the tipped occupation is any work that does not provide
> service to customers for which tipped employees receive tips, and does not directly
> support tip-producing work. **If a tipped employee is required to perform work
> that is not part of the employee's tipped occupation, the employer may not
> take a tip credit for that time** [emphasis added].

> (ii) Examples: The following examples illustrate work that is not part of the tipped
> occupation because the work does not provide service to customers for which
> tipped employees receive tips, and does not directly support tip-producing work.
> **This list is illustrative and is not exhaustive** [emphasis added]. Preparing food,
> including salads, and cleaning the kitchen or bathrooms, is not part of the tipped
> occupation of a server. Cleaning the dining room or bathroom is not part of the
> tipped occupation of a bartender…. Cleaning the dining room and bathrooms is not
> part of the tipped occupation of a service bartender…. Cleaning the kitchen or
> bathrooms is not part of the tipped occupation of a busser….

55.     29 C.F.R. § 531.56(f)(4), addressing situations where an employer is not

permitted to take a tip credit as a result of a tipped employee performing supporting but not tip-

producing work, provides:

> ***Substantial amount of time.*** An employer can take a tip credit for the time a tipped
> employee spends performing work that is not tip-producing, but directly supports
> tip-producing work, **provided that the employee does not perform that work for
> a substantial amount of time** [emphasis added]. For the purposes of this section,
> an employee has performed work for a substantial amount of time if:

>> (i) The directly supporting work exceeds a 20 percent workweek tolerance,
>> which is calculated by determining 20 percent of the hours in the workweek
>> for which the employer has taken a tip credit. The employer cannot take a
>> tip credit for any time spent on directly supporting work that exceeds the 20
>> percent tolerance. Time for which an employer does not take a tip credit is
>> excluded in calculating the 20 percent tolerance; or

---

[16] *Id.* (last accessed August 3, 2023).

(ii) For any continuous period of time, the directly supporting work exceeds 30 minutes. If a tipped employee performs directly supporting work for a continuous period of time that exceeds 30 minutes, the employer cannot take a tip credit for any time that exceeds 30 minutes….

56.     In addition, the FLSA prohibits employers from keeping tips received by employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit. 29 U.S.C. § 203(m).

57.     Employers may not take a tip credit if they violate the prohibition against unlawfully retaining any portion of their employees' tips. 29 U.S.C. § 203(m)(2); 29 C.F.R. §§ 531.52, 531.54, 531.59.

**Defendants' Impermissible Tip Credit Policies and Practices**

58.     Defendants compensated Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class as tipped employees during Plaintiffs,' other Opt-In Plaintiffs,' and members of the State Law Class's employments; Defendants paid Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class less than the statutory minimum hourly wage, a sub-minimum wage, and took a "tip credit" against Defendants minimum wage obligations.

59.     As outlined above, however, Defendants were prohibited from taking a tip credit when (1) their tipped employees performed work that is not part of the employee's tipped occupation, (2) their tipped employees performed work that is directly supporting work but non-tipped work when the employees' time performing these tasks exceeded twenty percent of their tipped employees' time worked during a workweek, (3) their tipped employees performed non-tipped but directly supporting work for a continuous period of time that exceeds 30 minutes during a workweek, or (4) managers or supervisors kept any portion of the tipped employees' tips.

60.     Despite these requirements, Defendants violated the FLSA and Ohio law,[17] and were thus not permitted to take a tip credit, because of all four reasons outlined in the above paragraph as further detailed below.

61.     Defendants require Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class to arrive at their place of employment – Defendants' restaurants – as much as two (2) hours prior to a restaurant opening time.

62.     Only by way of example, Defendants' restaurant "GOMA" opens at 5:00 p.m. Tuesday – Saturday as shown in the screenshot from https://gomarestaurant.com/ below:



63.     Similarly, only by way of example, Defendants' restaurant "Dante Tremont" has similar hours, and Defendants' restaurant "Ginko" opens one hour earlier daily, as shown in the screenshots from https://danteboccuzzi.com/dante-tremont/, and https://danteboccuzzi.com/ginko-restaurant/, respectively, below:

---

[17] "Ohio law incorporates the FLSA's definitions, standards, and principles for its minimum wage and overtime compensation provisions." *Hurt v. Commerce Energy, Inc.,* N.D.Ohio No. 1:12-CV-758, 2017 U.S. Dist. LEXIS 128850, at *3-5 (Aug. 14, 2017), fn. 9; Ohio Const. Art. II, § 34a; Ohio Rev. Code §§ 4111.02-.03.



64.     Despite that Defendants' restaurants, including "GOMA" (by way of example), have an opening time of 5:00 p.m., Defendants required Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class to arrive at their place of employment at as early as two (2) hours prior to the restaurant opening time, as shown in the exemplar schedules (with non-Named Plaintiff redactions as to employee names) below:

| | | 6/20/2023 | 6/21/2023 | 6/22/2023 | 6/23/2023 | 6/24/2023 |
|---|---|---|---|---|---|---|
| | | 7:10 | 7:10 | 1:10 | 7:10 | 4:10 |
| | | 430 | 430 | 430 | | |
| | | X | X | X | X | X |
| | | R | R | R | | |
| | | 3:30 | | 330 | 3:00 | 3:30 |
| | | | 3:30 | 445 | 3:30 | 3:00 |
| | | R | R | 4:00 O/C | 3:30 | 4:30 SERV |
| | | | | | | |
| | | | 4:00 | 4:30 | 3:30 | 4:30 |
| | | | | 4:00 | R | R |
| | | 400 | 4:30 | | 3:30 | 3:30 |
| Carter Ellis | | 445 G | 430 O/C | 4:00 | | 3:30 |
| | | 4:00 | X | X | X | X |
| | | 4:30 | 4:00 | X | 4:30 | |
| Madison Ellis | | | | | 4:30 | 3:30 |

15

65.     As shown in the above work schedule screenshot, Defendants' tipped employees, including but not limited to Named Plaintiffs Madison Ellis, Carter Ellis (only by way of example), and Kennedy Ellis, were required to arrive a significant period of time, as much as two (2) hours early, despite that Defendants restaurant, in this example "GOMA," did not open until as much as two (2) hours later at 5:00 p.m.

66.     The requirement of Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class to work up to two (2) hours, and usually a minimum of thirty (30) minutes to sixty (60) minutes, prior to Defendants' restaurants opening times was both mandatory and required to perform "work that is not part of the tipped occupation," as well as nontipped but "directly supporting work" for a "substantial amount of time," as those terms are used in the FLSA, 29 C.F.R. § 531.56.

67.     During the required pre-opening times, Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class did not perform customer facing duties. Instead, Defendants required Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class to perform work that included, but was not limited to: polishing glasses; stocking glasses; stocking plates; polishing and restocking silverware; cleaning check presenters; filling condiments; folding linens; setting up the dining room, bar, and patio; stocking server and bus stations; sweeping and generally cleaning the dining room, bathroom, bar area, and patio; washing dishes and silverware (especially on days when no dishwasher was scheduled); cleaning ramekins; stocking ice; cleaning appliances (e.g., the soup machine and hot towel machine) which included disassembling, taking parts to the sink if necessary, washing, and reassembling; breaking down and cleaning the server line; cutting lemons and limes (for bartenders); cleaning and wiping

16

down booths; cleaning bathrooms (including wiping mirrors, sweeping, wiping the sink and counter, restocking toilet paper and paper towels, cleaning the toilet); and moving tables.

68.     Defendants' tipped employee minimum wage practices and policies violated the FLSA and Ohio law in several ways, as outlined below.

69.     ***First***, during the required pre-opening time, as outlined above, as well as during their shifts and after the restaurant closed at the end of their shifts, Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class were required to perform tasks that the DOL has identified as "[w]ork that is not part of the tipped occupation." Pursuant to DOL regulations that have the force of law, "[w]ork that is not part of the tipped occupation is any work that does not provide service to customers for which tipped employees receive tips, and does not directly support tip-producing work." As provided by 29 C.F.R. § 531.56(f)(5), for such work that a "tipped employee is required to perform [] that is not part of the employee's tipped occupation, the employer may not take a tip credit for that time." These tasks include, but are not necessarily limited to, cleaning bathrooms, cleaning appliances, washing dishes and silverware, and other duties performed by Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class.

70.     Although the FLSA permits employers to take a tip credit against their minimum wage obligations for employees who customarily and regularly receive tips, Defendants were prohibited from taking a tip credit when tipped employees performed work that is not part of the tipped occupation. Though Defendants were prohibited from taking a tip credit against their minimum wage obligations for Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class when these employees performed work that is not part of the tipped occupation, including but not limited to the tasks described in ¶ 69 above, Defendants, in violation of the FLSA, 29 U.S.C. §§ 203(m), 206, and Ohio law, unlawfully took a tip credit against their minimum wage

obligations to the detriment of Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class.

71.     **Second**, Defendants' utilization of the tip credit provisions of the FLSA and Ohio law for Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class when these employees performed non-tipped, but "directly supporting work," exceeding twenty percent of their weekly time worked violates the FLSA and regulations thereunder that have the force of law, including 29 C.F.R. § 531.56(f)(4)(i). Regularly, in one or more workweeks during their employments, Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class were required to performed non-tipped, but "directly supporting work," exceeding twenty percent of their weekly time worked, for a "substantial amount of time." *Id.*

72.     Although the FLSA permits employers to take a tip credit against their minimum wage obligations for employees who customarily and regularly receive tips, Defendants were prohibited from taking a tip credit when tipped employees performed non-tipped, but "directly supporting work," exceeding twenty percent of their weekly time worked. Though Defendants were prohibited from taking a tip credit against their minimum wage obligations for Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class when these employees performed non-tipped, but "directly supporting work," exceeding twenty percent of their weekly time worked, including but not limited to when performing the tasks described in ¶ 67 above, Defendants, in violation of the FLSA, 29 U.S.C. §§ 203(m), 206, and Ohio law, unlawfully took a tip credit against their minimum wage obligations to the detriment of Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class.

73.     **Third**, Defendants' utilization of the tip credit provisions of the FLSA and Ohio law for Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class when these

employees performed non-tipped, but "directly supporting work," for any continuous period of time exceeding 30 minutes violates the FLSA and regulations thereunder that have the force of law, including 29 C.F.R. § 531.56(f)(4)(ii). Regularly, during one or more workweeks during their employments, Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class were required to performed non-tipped but "directly supporting work" for continuous periods of time exceeding 30 minutes, by way of example, when Defendants required them to arrive at Defendants' restaurants and start performing side work as much as two (2) hours before Defendants' restaurants opened to customers.

74.     Although the FLSA permits employers to take a tip credit against their minimum wage obligations for employees who customarily and regularly receive tips, Defendants were prohibited from taking a tip credit when tipped employees performed non-tipped but "directly supporting work" for continuous periods of time exceeding 30 minutes. Though Defendants were prohibited from taking a tip credit against their minimum wage obligations for Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class when these employees performed non-tipped but "directly supporting work" for continuous periods of time exceeding 30 minutes, including but not limited to when performing the tasks described in ¶ 63 above, Defendants, in violation of the FLSA, 29 U.S.C. §§ 203(m), 206, and Ohio law, unlawfully took a tip credit against their minimum wage obligations to the detriment of Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class.

75.     ***Fourth***, as further outlined in the section below, Defendants' utilization of the tip credit provisions of the FLSA and Ohio law for Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class when these employees were required to share tips with supervisors and/or managers violated the FLSA and regulations thereunder that have the force of law, including 29

19

U.S.C. § 203(m), 29 C.F.R. § 531.52. Regularly, during one or more workweeks during their employments, Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class were required to share tips with supervisors and/or managers who were not permitted to take a portion of tips.

76.     Although the FLSA permits employers to take a tip credit against their minimum wage obligations for employees who customarily and regularly receive tips, Defendants were prohibited from taking a tip credit when tipped employees shared tips with supervisors and managers who were not permitted to take a portion of tips. Though Defendants were prohibited from taking a tip credit against their minimum wage obligations for Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class when these employees shared tips with supervisors and managers, Defendants, in violation of the FLSA, 29 U.S.C. §§ 203(m), 206, and Ohio law, unlawfully took a tip credit against their minimum wage obligations to the detriment of Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class.

77.     As a result of Defendants' unlawful and willful tipped employee minimum wage practices and policies, Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class are entitled to the non-tipped employee full minimum wage plus tips for every hour of work that they performed for Defendants during the statutory period, or the difference between $8.70 per hour in 2020, $8.80 per hour in 2021, $9.30 per hour in 2022, and $10.10 per hour in 2023, and the wage paid by Defendants. Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class are entitled to receive the difference between the Ohio minimum wage rate and the tip credit adjusted minimum wage rate paid for each hour they worked for Defendants.

78.     In addition, Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class are entitled to automatic triple damages for Defendants' minimum wage violations pursuant to Ohio Const. Art. II, Sec. 34a.

79.     The manner in which Defendants set up their time payment practices and policies were done in such a way as to inherently require their tipped employees to perform side work, as well as perform work that is not part of the tipped occupation, in order to substantially reduce labor costs – work that should have been paid at full minimum wage or performed by non-tipped employees who earned at least the minimum wage when performing such work. Defendants' practices and policies were antithetical to the tip credit provisions of the FLSA, Ohio law, and regulations thereunder that have the force of law, the same practices and policies discussed in the Federal Register where tipped employees were required to spend substantial periods of time – while receiving a fraction of minimum wage – performing tasks that do not generate tips.[18]

80.     Defendants' pay practices were the result of systematic and company-wide policies originating at the corporate level. Defendants' policies with respect to the nonpayment of minimum wages resulted from knowing or reckless executive decisions. Defendants, through their supervisors and managers, personally knew that Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class were performing "work that is not part of the tipped occupation," as well as side work, for significant continuous periods of time before, as well as during, and as well as for significant continuous periods of time after, their restaurants opening times for which these employees were not paid full minimum wages, as a result of Defendants' tipped employee scheduling and restaurants opening/closing times policies, and thus Defendants' actions were deliberate and willful within the meaning of the FLSA and Defendants lacked a

---

[18] *See* https://www.federalregister.gov/documents/2021/10/29/2021-23446/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal (last accessed August 3, 2023).

good faith basis for their actions. Defendants knew about the minimum wage requirements of the FLSA and Ohio law or acted in reckless disregard as to Defendants' obligations under the FLSA and Ohio law.

### Defendants' Unlawful Tip Practices

81.     In addition, Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class were required by Defendants to share tips with supervisors, managers and/or other customarily non-tipped employees.

82.     The FLSA provides that "an employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m).

83.     Defendants were prohibited from taking a tip credit when they distributed tips to customarily non-tipped employees, including supervisors, managers and/or other customarily non-tipped employees. 29 C.F.R. § 531.59.

84.     Disbursement of tips to supervisors and/or managers – as defined in 29 C.F.R. § 531.52(b)(2) ("[f]or purposes of section 3(m)(2)(B), the term 'manager' or 'supervisor' shall mean any employee whose duties match those of an executive employee as described in § 541.100(a)(2) through (4) or § 541.101 of this chapter") – does not constitute a valid tip practice under DOL regulations and federal and state law. As a result of Defendants' unlawful manager/supervisor tip practices, Defendants were disqualified from taking a tip credit.

85.     As a result of the impermissible keeping of tips for any purpose, including allowing managers and/or supervisors to keep monies that would have otherwise been Plaintiffs,' other Opt-In Plaintiffs,' and members of the State Law Class's tips, regardless of whether or not

Defendants took a tip credit, Defendants violated 29 U.S.C. § 203(m). As a result of the impermissible tip keeping policies or practices, Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class were regularly paid less than the Ohio and federal minimum wage. *See* 29 C.F.R. § 531.54. As a result of Defendants' tip keeping policies or practices, Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class are entitled to receive the non-tipped employee minimum wage for every hour of work that they performed for Defendants, in addition to all tips retained by supervisors, managers and/or other customarily non-tipped employees.

### The Willfulness of Defendants' Violations

86.     In addition to the above allegations demonstrating the willfulness of Defendants' wage violations as provided for above, Defendants knew that Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class were entitled to minimum wages under federal and state law or acted in reckless disregard for whether they were so entitled.

87.     By denying Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class minimum wages as required by the FLSA and Ohio law, Defendants' acts were not based upon good faith. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions requiring the proper and prompt payment of minimum wages under federal and Ohio law, as recited in this Complaint, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as required. Defendants therefore knew about the minimum wage requirements of the FLSA and Ohio law, or acted in reckless disregard as to Defendants' obligations under these laws.

88.     Moreover, Defendants' minimum wage obligations under the FLSA and Ohio law were clearly known by Defendants, but nonetheless willfully and intentionally disregarded. For

23

example, O.R.C. § 4111.09 provides that "[e]very employer subject to sections 4111.01 to 4111.17 of the Revised Code, or to any rules issued thereunder, shall keep a summary of the sections, approved by the director of commerce, and copies of any applicable rules issued thereunder, or a summary of the rules, posted in a conspicuous and accessible place in or about the premises wherein any person subject thereto is employed." As approved by the Director of Commerce, this conspicuously-placed posting (applicable to 2023, by way of example) includes the language: "*TIPPED EMPLOYEES*… A Minimum Wage of $5.05 per hour PLUS TIPS… 'Tipped Employees' includes any employee who engages in an occupation in which he/she customarily and regularly receives more than thirty dollars ($30.00) per month in tips. Employers electing to use the tip credit provision must be able to show that tipped employees receive at least the minimum wage when direct or cash wages and the tip credit amount are combined."[19]  Similarly, the FLSA, 29 C.F.R. § 516.4, also required Defendants to inform their employees, including Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class, of the tip credit and minimum wage provisions of the FLSA. *Id.* ("Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act … in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy.")

89.     Defendants therefore knew about the minimum wage requirements of the FLSA and Ohio law, or acted in reckless disregard for whether Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class were entitled to minimum wages and/or tips.

90.     Defendants intentionally, knowingly, and willfully circumvented the requirements of the FLSA and Ohio law.

---

[19] *See, e.g.,* https://com.ohio.gov/static/documents/2023MWPoster.pdf (emphasis original) (last accessed August 4, 2023).

91.     Plaintiffs and other Opt-In Plaintiffs are therefore entitled to liquidated damages equal to the amount of all unpaid minimum wages, pursuant to 29 U.S.C. § 260.

92.     Plaintiffs and other Opt-In Plaintiffs who join this case pursuant to 29 U.S.C. § 216(b), and the members of the State Law Class, are also entitled to damages in the amount of their unpaid minimum wages, as well as additional damages as required by Art. II, Sec. 34a of the Ohio Constitution in an additional amount equal to two times the amount of unpaid minimum wages, regardless of whether Defendants' failure to pay minimum wages were willful and/or are entitled to a defense based on good faith.

93.     The above payroll practices resulted in knowing and willful minimum wage and tip violations of the FLSA, 29 U.S.C. §§ 201-219; Ohio Const. Art. II, § 34a; and resulted in the unlawful deprivation of minimum wages and tips to the benefit of Defendants and to the detriment of Defendants' employees, including Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class .

## FLSA COLLECTIVE
## MINIMUM WAGE ALLEGATIONS
### (As to COUNT ONE)

94.     Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

95.     Plaintiffs bring this case under the FLSA, 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

96.     Plaintiffs bring this case on behalf of themselves and a group of employees of Defendants (referred to herein as the "Opt-In Plaintiffs") who assert claims under the minimum

wage provisions of the FLSA, 29 U.S.C. § 201, *et seq.* The potential "Opt-In Plaintiffs" who are "similarly situated" to Plaintiffs with respect to Defendants' FLSA minimum wage violations include:

> **All current and former tipped employees (including but not limited to servers, bartenders, and other employees with similar job titles and/or positions) of Defendants during the period of three years preceding the commencement of this action for whom Defendants took a tip credit. [20]**

97.     Such persons are "similarly situated" with respect to Defendants' FLSA minimum wage violations, as to the collective group of employees identified above, in that all were non-exempt tipped employees of Defendants for whom Defendants took a tip credit, all were subjected to and injured by Defendants' unlawful practice of failing to pay minimum wage for all hours worked, and all have the same claims against Defendants for unpaid minimum wages as well as for liquidated damages, attorneys' fees, and costs.

98.     Plaintiffs and potential Opt-In Plaintiffs, having willfully been not paid at least the federal and Ohio minimum wage for all hours they worked for Defendants pursuant to the common policies described herein, are "similarly situated" as that term is used in 29 U.S.C. § 216(b) and the associated decisional law. *See* 29 U.S.C. § 206.

99.     Plaintiffs and other potential Opt-In Plaintiffs are similarly situated because, among other reasons, Plaintiffs, as well as the other potential Opt-In Plaintiffs, are owed approximately hundreds to thousands of hours when working for Defendants and for Defendants' benefit for which they were not paid minimum wage as a result of Defendants' unlawful tip credit policies, and practices in conformity with these policies.

---

[20] Plaintiffs respectfully reserve the right to amend and refine the definition of the Opt-In Plaintiffs group members they seek to have the Court serve notice based upon further investigation and discovery.

100.    Plaintiffs and potential Opt-In Plaintiffs have been similarly affected by the FLSA minimum wage violations of Defendants in one or more workweeks during the relevant time period, which amount to a single decision, policy, or plan to willfully avoid paying all earned federal and Ohio minimum wages.

101.    Plaintiffs and potential Opt-In Plaintiffs have been damaged by Defendants' willful refusal to pay at least the federal and Ohio minimum wage for all hours worked. As a result of Defendants' willful FLSA violations, each Plaintiffs and potential Opt-In Plaintiffs are similarly situated in that each is entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, interest, and attorneys' fees.

102.    Throughout their employments with Defendants, Plaintiffs were subjected to the same tip credit and payroll policies and practices by Defendants that other potential Opt-In Plaintiffs were subjected to.

103.    Plaintiffs are similarly situated to potential Opt-In Plaintiffs and will prosecute this action vigorously on their behalf.

104.    Plaintiffs are entitled to send notice to all potential Opt-In Plaintiffs pursuant to Section 216(b) of the FLSA. Identification of potential Opt-In Plaintiffs is readily available from the timekeeping and compensation records, including scheduling, timekeeping and payroll data, maintained by Defendants. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendants. Notice can be provided by means permissible under the FLSA and decisional law.

105.    Immediate, prompt notice of this matter to similarly situated persons pursuant to 29 U.S.C. § 216(b) – by Court order – is proper and necessary so that such persons may be sent a

Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

106. Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to potential Opt-In Plaintiffs is appropriate because they have been subjected to the common business practices referenced in the paragraphs above, and the success of their claims depends upon the resolution of common issues of law and fact, including, inter alia, whether Defendants satisfied the FLSA's and Ohio law's requirements for payment of all statutory minimum wages.

107. The precise size and identity of the group of potential Opt-In Plaintiffs are readily ascertainable from the payroll records, timekeeping records, and/or employee and personnel records of Defendants that Defendants were required to maintain, pursuant to the FLSA and Ohio law. Plaintiffs cannot yet state the exact number of similarly-situated persons but aver, upon information and belief, that the group of potential Opt-In Plaintiffs consist of approximately one hundred or more persons.

## OHIO CLASS ACTION ALLEGATIONS
### (As to COUNT TWO)

108. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

109. Plaintiffs also bring this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of a group of employees of Defendants who assert claims under Art. II, § 34a of the Ohio Constitution (referred to herein as the "State Law Class"), defined as:

> **All current and former tipped employees (including but not limited to servers, bartenders, and other employees with similar job titles and/or positions) of Defendants during the period of three years preceding the commencement of this action for whom Defendants took a tip credit.**

110.    There are questions of law or fact common to the State Law Class, including but not limited to:

Whether Defendants' conduct as described above violates Ohio Constitutional law governing payment of minimum wages;

Whether Defendants denied Plaintiffs and other members of the State Law Class earned and owed compensation where, among other things, these employees were not paid minimum wages for all hours worked;

Whether Defendants denied Plaintiffs and other members of the State Law Class minimum wages by, among other things, taking a tip credit when Defendants were not permitted to do so; and

What amount of monetary relief will compensate Plaintiffs and other members of the State Law Class for Defendants' failure to pay minimum wages owed when the minimum wages were required to be paid.

111.    Plaintiffs' claims are typical of the claims of other members of the State Law Class. Plaintiffs' claims arise out of the same uniform course of conduct by Defendants, and are based on the same legal theories, as the claims of other State Law Class members.

112.    The State Law Class, outlined above, is so numerous that joinder of all class members is impracticable. Plaintiffs cannot yet state the exact number of class members but aver, upon information and belief, that the State Law Class consists of approximately one hundred or more persons. The number of class members, as well as their identities, are ascertainable from the payroll and personnel records Defendants have maintained, and were required to maintain, pursuant to the FLSA and Ohio law. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; Ohio Const. Art. II, § 34a.

113.    Plaintiffs will fairly and adequately protect the interests of the State Law Class. Plaintiffs' interests are not antagonistic to, but rather are in unison with, the interests of other class members. Plaintiffs' counsel have broad experience in handling class action litigation,

including wage and hour litigation, and are fully qualified to prosecute the claims of the State

Law Class in this case.

114.    The questions of law or fact that are common to the State Law Class predominate

over any questions affecting only individual members. The primary questions that will determine

Defendants' liabilities to the State Law Class, listed above, are common to the State Law Class

as a whole, and predominate over any questions affecting only individual class members.

115.    A class action is superior to other available methods for the fair and efficient

adjudication of this controversy. Requiring class members to pursue their claims individually

would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and

demands on court resources. Many class members' claims are sufficiently small that they would

be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually.

Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to

be adjudicated for all class members with the efficiencies of class litigation.

**<u>COUNT ONE</u>**
**(FLSA Minimum Wage Violations)**
***On Behalf of Plaintiffs and other Opt-In Plaintiffs who***
***Join this Action Pursuant to 29 U.S.C. § 216(b)***

116.    Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten

herein.

117.    Plaintiffs bring this claim for violation of the FLSA's minimum wage provisions

on behalf of themselves and other Opt-In Plaintiffs who join this case pursuant to 29 U.S.C. §

216(b).

118.    The FLSA requires that "non-exempt" employees receive a minimum hourly

wage for all work their employers suffer, permit or require them to perform, 29 U.S.C. § 206.

119.    Defendants failed to comply with the requirements of 29 U.S.C. § 206 by paying Plaintiffs and other Opt-In Plaintiffs less than the applicable minimum wage for hours worked during one or more workweeks, as well as by denying tips to tipped employees pursuant to 29 U.S.C. § 203 and regulations thereunder that have the force of law.

120.    Defendant has engaged in a series of unlawful acts, practices, policies, and procedures in violation of the FLSA, including by refusing and/or failing to calculate and pay Plaintiffs' and other Opt-In Plaintiffs' minimum wages and tips as required by federal law. 29 U.S.C. § 203, 206.

121.    Defendants' unlawful conduct directly and proximately caused Plaintiffs and other Opt-In Plaintiffs to suffer damages for which they are entitled to judgment.

122.    Defendants' violations have been willful and/or in reckless disregard of Plaintiffs and other Opt-In Plaintiffs' rights, and entitle Plaintiffs and other Opt-In Plaintiffs to liquidated damages. 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

### COUNT TWO
**(Ohio Constitution Minimum Wage Violations)**
*On Behalf of Plaintiffs, other Opt-In Plaintiffs,*
*and State Law Class Members*

123.    Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

124.    Plaintiffs bring this claim for violation of the Ohio's Constitutional minimum wage provisions contained within Art. II, Sec. 34a of the Ohio Constitution on behalf of themselves and other Opt-In Plaintiffs and State Law Class members.

31

125.    The Ohio Constitution requires that employees receive a minimum hourly wage for all work their employers suffer, permit or require them to perform.

126.    Based on the improper practices and policies described herein, Defendants failed to comply with the requirements of the Ohio Constitution by paying employees less than the applicable minimum wage rate.

127.    Defendants have engaged in a series of unlawful acts, practices, policies, and procedures in violation of Art. II, Sec. 34a of the Ohio Constitution, including by refusing and/or failing to calculate and pay Plaintiffs,' other Opt-In Plaintiffs,' and State Law Class members' minimum wages as required by the Ohio Constitution.

128.    Defendants' unlawful conduct directly and proximately caused Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class to suffer damages for which they are entitled to judgment.

129.    Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class are entitled to "equitable and monetary relief," including "two times the amount of the back wages," or triple damages, for Defendants' minimum wage violations pursuant to Ohio Const. Art. II, Sec. 34a.


[Plaintiffs' *Prayer for Relief* follows on the next page.]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, other Opt-In Plaintiffs, and members of the State Law Class, respectfully pray that this Honorable Court:

A.    Promptly order Defendants to provide all scheduling, payroll, timekeeping, and other relevant records necessary to determine similarly situated individuals;

B.    Prompt issuance of Court-approved notice to similarly-situated persons informing them of this action and enabling them to opt in;

C.    Tolling of the statute of limitations, *freely*, as to all would-be Opt-In Plaintiffs to the date this matter was initially filed,[21]

D.    Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiffs and other members of the State Law Class, who seek recovery under Ohio Const. Art. II, § 34a;

E.    Enter judgment against Defendants, *jointly and severally*, and in favor of Plaintiffs, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the State Law Class;

F.    Award compensatory damages to Plaintiffs, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b) and Ohio law in the amount of their unpaid minimum wages and tips, as well as liquidated damages in an equal amount, in addition to penalty damages as applicable;

G.    Award compensatory damages to Plaintiffs, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the State Law Class in the amount of their unpaid minimum wages, as well as additional automatic damages as required by Art. II, Sec. 34a of the Ohio Constitution in an amount equal to two times the amount of unpaid minimum wages;

H.    Designation of Plaintiffs as representatives of the Fed. R. Civ. P. 23 State Law Class, and counsel of record as Class Counsel for the State Law Class;

I.    Award Plaintiffs, other Opt-In Plaintiffs, and members of the State Law Class prejudgment interest, post-judgment interest, costs, and attorneys' fees incurred in prosecuting this action, expert fees, as well as statutory and/or punitive damages and an award of damages representing Defendants' employers' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes; and

---

[21] *Clark v. A&L Homecare & Training Ctr., LLC,* 68 F.4th 1003, 1017 (6th Cir.2023) (holding, by majority concurrence, that "given the court's new standard, district courts should freely grant equitable tolling to would-be opt-in plaintiffs.")

J.      Enter such other and further relief as this Court deems equitable, just, and proper.

Respectfully Submitted,

*s/ Ryan A. Winters*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221      F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, Ohio 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221      F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiffs, Opt-In Plaintiffs,*
*and Putative Class Counsel*

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)
